IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN MORRIS, on behalf of herself and those similarly situated,<br>　　　　　　　　　　Plaintiff,<br>　　　v.<br><br>CK FRANCHISING, INC.; MD ENTERPRISES LLC; and MARLIN DUNCAN,<br>　　　　　　　　　　Defendants. | CIVIL ACTION<br><br>FIELD ELECTRONICALLY ON JANUARY 4, 2015<br><br>NON-JURY TRIAL |

## **COMPLAINT – CLASS ACTION**

Plaintiff Kathleen Morris ("Plaintiff") brings this class action lawsuit against Defendants CK Franchising, Inc., MD Enterprises LLC, and Marlin Duncan, seeking all available relief under the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*

## **JURISDICTION AND VENUE**

1. Subject matter jurisdiction is proper under 28 U.S.C. § 1332(d)(2)(A).

2. Venue is proper under 28 U.S.C. § 1391.

## **PARTIES**

3. Plaintiff is domiciled at 517 ½ R Orchard Street, Warrior Run, PA 18706. Plaintiff lives at this address, does not maintain any other address, and

intends to remain at this address indefinitely.  As such, Plaintiff is a citizen of Pennsylvania for purposes of 28 U.S.C. § 1332(a)(1).

4. Defendant CK Franchising, Inc. ("CK Franchising") is a corporate entity incorporated in Ohio and maintaining its principal place of business at 6640 Poe Avenue, Dayton, OH 45414.  CK Franchising's corporate officers (including, *inter alia*, CEO Sarosh Mistry) are stationed at the Dayton office and direct Defendant's activities from this office.   As such, CK Franchising is a citizen of Ohio for purposes of 28 U.S.C. § 1332(a)(1).

5. CK Franchising is the franchisor for a network of over 600 home care businesses operating under the "Comfort Keepers" brand name.  Approximately 31 such businesses are located in Pennsylvania.

6. Defendant MD Enterprises LLC ("MD Enterprises") is a corporate entity incorporated in Pennsylvania and maintaining its principal place of business at 261 South Church Street, Hazleton, PA 18201.

7. MD Enterprises is a franchisee that, pursuant to a contract with CK Franchising, operates Comfort Keepers businesses in Hazleton, Wilkes-Barre, Pottsville, Bloomsburg, and Allentown.

8. Defendant Marlin Duncan ("Duncan") is an individual residing in or around Hazleton, PA.

9. Duncan is the owner and chief executive officer of MD Enterprises and is personally involved in managing the Comfort Keepers businesses in Hazleton, Wilkes-Barre, Pottsville, Bloomsburg, and Allentown.

**FACTS**

10. Each Comfort Keepers franchise employs individuals who are generally referred to as "caregivers" and provide "companionship services" to homebound clients.

11. CK Franchising requires caregivers to participate in "[c]ompany-wide in-service education and training programs."

12. Upon being hired, CK Franchising provides caregivers with an employee handbook ("the CK Handbook").

13. The CK Handbook is primarily drafted by CK Franchising.

14. The CK Handbook informs caregivers of the following: "This employee handbook is intended to facilitate communication *between you and CKFI*."[1] (emphasis supplied).

15. The CK Handbook, by its own terms, "is designed to acquaint [caregivers] with Comfort Keepers and provide basic information about working conditions, employee benefits, philosophies, and some of the policies affecting [caregivers] in [their] employment relationship."

---

[1] "CKFI" is an abbreviation for CK Franchising, Inc.

16.     The CK Handbook describes various employment policies that apply to all caregivers and cover topics such as, *inter alia*, discrimination/harassment, drug testing, employee orientation, education and training, employment records, compensation, job classifications, work hours, timekeeping, pay day procedures, performance evaluations, workplace safety, family medical leave, behavior, attendance, and employee discipline.

17.     The CK Handbook requires that caregivers be paid an hourly wage.

18.     The CK Handbook prohibits caregivers from receiving overtime premium pay for hours worked over 40 per week.  For example, the CK Handbook requires each caregiver to agree to the following statements:  "I understand that I am being employed to provide 'companionship services,' as that term is defined by federal law.  I understand that, under federal law, the Company is not required to pay the minimum wage or overtime (time and a half for hours over 40 in a week) to providers of 'companionship services.'"

19.     CK Franchising's above policy violates the PMWA, which entitles caregivers to overtime premium pay for hours worked over 40 per week.  See Bayada Nurses, Inc. v. Commonwealth of Pennsylvania, 8 A.3d 866 (Pa. 2010).

20.     MD Enterprises and Duncan – like other Comfort Keepers franchisees – pay caregivers according to CK Franchising's policy of prohibiting overtime premium pay.

21. Plaintiff is employed as a Comfort Keepers caregiver and is assigned to a franchise owned by MD Enterprises and Duncan.

22. Upon being hired, Plaintiff received the CK Handbook.

23. Plaintiff's CK Handbook informs her that: "This employee handbook is intended to facilitate communication *between you and CKFI*." (emphasis supplied).

24. Pursuant to CK Franchising's policy, as described in the CK Handbook, Plaintiff is paid an hourly wage. Her current hourly wage is $9.50

25. Plaintiff often works over 40 hours per week. For example: (i) during the two-week pay period ending August 25, 2013, Plaintiff was credited with working 129.5 hours; (ii) during the two-week pay period ending September 8, 2013, Plaintiff was credited with working 118.5 hours; and (iii) during the two-week period ending September 22, 2014, Plaintiff was credited with working 135.75 hours.

26. Pursuant to CK Franchising's policies, as described in the CK Handbook, Plaintiff does not receive any overtime premium pay for hours worked over 40 per week. For example: (i) during the two-week pay period ending August 25, 2013, Plaintiff was paid at her $8.25 straight-time rate for all of her credited 129.5 hours; (ii) during the two-week pay period ending September 8, 2013, Plaintiff was paid at her $8.25 straight-time rate for all of her credited 118.5 hours;

and (iii) during the two-week period ending September 22, 2014, Plaintiff was paid at her $8.25 straight-time rate for all of her credited 135.75 hours.

27. Plaintiff's non-receipt of overtime premium pay is the direct result of both (i) CK Franchising's creation and dissemination of a policy prohibiting caregivers from receiving overtime premium pay and (ii) MD Enterprises' and Duncan's implementation and maintenance of such policy in issuing Plaintiff's paychecks. As such, CK Franchising, MD Enterprises, and Duncan have directly and indirectly acted in each others' interests with respect to Plaintiff's employment and with respect to the specific compensation practices challenged in this lawsuit.

## CLASS ALLEGATIONS

28. Plaintiff sues CK Franchising on behalf of the following class: All individuals who, during any time since January 4, 2012, were employed by a Pennsylvania Comfort Keepers franchise, paid an hourly wage, and classified as overtime-exempt.

29. Plaintiff sues MD Enterprises and Duncan on behalf of the following sub-class: All individuals who, during any time since January 4, 2012, were employed by any Comfort Keepers franchise owned or operated by MD Enterprises and/or Duncan, paid an hourly wage, and classified as overtime-exempt.

30.     A class action is appropriate because, as summarized below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

31.     Upon information and belief, the class includes hundreds of individuals and, as such, is so numerous that joinder of all class members is impracticable.

32.     Plaintiff is a class member, her claims are typical of the claims of other class members, and she has no interests that are antagonistic to or in conflict with other class members.

33.     Plaintiff and her counsel will fairly and adequately represent the class members and their interests.

34.     Questions of law and fact are common to all class members since this lawsuit concerns the legality of Defendants' uniform overtime pay policy.  The legality of this policy will be demonstrated by applying generally applicable legal principles to common evidence.

35.     Because this lawsuit concerns the legality of Defendants' uniform overtime pay policy, common questions of law and fact predominate over any questions affecting only individual class members, and the class action device is superior to other available methods for the lawsuit's fair and efficient adjudication.

## **COUNT I**

36.     All previous paragraphs are incorporated herein.

37. Plaintiff and the class are employees entitled to the PMWA's protections.

38. Defendants are employers required to comply with the PMWA.

39. The PMWA entitles employees to overtime premium pay "not less than one and one-half times the employee's regular rate" for hours worked over 40 per week. See 43 P.S. § 333.104(c).

40. Under the PMWA, home health employees such as Plaintiff and the class are entitled to overtime premium pay. See Bayada Nurses, supra.

41. Defendants violated the PMWA by failing to pay the overtime premium to Plaintiff and the class.

42. Plaintiff's counsel currently maintains a good faith belief that the overtime pay and prejudgment interest owed to the class exceeds $5,000,000.00.

**PRAYER FOR RELIEF**

Plaintiff seeks the following on behalf of herself and the class: (i) unpaid overtime wages; (ii) prejudgment interest; (iii) attorney's fees and expenses; and (iv) any other relief the Court deems just and proper.

Date: January 4, 2015

Respectfully,

*/s/ Peter Winebrake*

Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
Winebrake & Santillo, LLC
715 Twining Road, Suite 211

Dresher, PA 19025
(215) 884-2491

Jerry Martin*
David Garrison*
Barrett Johnston Martin & Garrison LLC
414 Union Street, Suite 900
Nashville, TN  37219
(615) 244-2202

* *Pro Hac Vice* Admission Anticipated